*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re A. M. GLOVER, Minor.

UNPUBLISHED
January 15, 2019

No. 343899
Wayne Circuit Court
Family Division
LC No. 13-514148-NA

Before: GLEICHER, P.J., and STEPHENS and O'BRIEN, JJ.

PER CURIAM.

The circuit court terminated respondent-mother's parental rights to her 15-month-old daughter, AMG, based on respondent's failure to adequately participate in and benefit from a service plan tailored to address substance abuse and mental health issues. Respondent challenges the level of services provided as well as the factual support for the court's statutory and best-interest findings. We discern no error and affirm.

## I. BACKGROUND

Respondent gave birth to AMG on November 29, 2016. Both mother and child tested positive for marijuana in the hospital. The Department of Health and Human Services (DHHS) took AMG into care directly from the hospital, partly because respondent admitted to using cocaine and marijuana while pregnant and partly because respondent's parental rights to two other children had already been terminated for failure to participate in and benefit from a services plan. AMG was placed with respondent's sister (who had also adopted one of respondent's young sons). Over the next several months respondent regularly visited the baby at her sister's home. Unfortunately, she did little else.

Early in the proceedings, both respondent's counsel and counsel for the DHHS were concerned about respondent's mental health and cognitive skills. The court ordered respondent to participate in a preliminary Clinic for Child Study evaluation and respondent met with psychiatrist Kai Anderson. Respondent reported suffering from ongoing severe depression since the removal of her sons. She also noted that she had been hit by a motor vehicle while crossing the street in 2013, leading to "ongoing issues with her memory, concentration, and severe headaches." Dr. Anderson opined that respondent "appeared to have an average level of intelligence." Ultimately, he recommended that respondent undergo full psychiatric and

psychological evaluations for depression and to gauge the impact of respondent growing up without nurturing parents. Anderson further asserted that respondent would require psychiatric and psychological treatment after the evaluations.

The DHHS referred respondent for the necessary evaluations in April, August, and October 2017. It also referred respondent for substance abuse treatment, random drug screens, and parenting classes. The DHHS mailed these referrals to respondent at the home of her cousin, where respondent claimed to live. The caseworker attempted to visit respondent at that address, however, and was advised that respondent did not live there. The caseworker tried to maintain telephone contact with respondent, but her phone was disconnected and the person who answered respondent's "emergency" number indicated that he or she was not connected with respondent. The caseworker left several messages with respondent's sister, knowing that respondent visited weekly, but this elicited no response. As a result, respondent never submitted to the court-ordered psychological and psychiatric evaluations. The DHHS was therefore unable to evaluate respondent's mental health or cognitive abilities and could not provide respondent with services catered to her needs.

However, respondent voluntarily enrolled in an inpatient substance abuse treatment program at Positive Images in March or April 2017. Respondent left without completing the program and provided no records or releases to the caseworker. Respondent claimed that she sought out mental health services from Team Wellness and had been taking psychotropic medication prescribed by that agency since the beginning of the proceedings. Yet respondent provided no records of these services either.

The court ordered the DHHS to file a supplemental petition seeking termination of respondent's parental rights in January 2018, based on respondent's failure to maintain contact with the caseworker or to participate in any ordered services (including parenting classes, drug screens, mental health evaluations, counseling, and therapy). It further appeared that respondent was homeless and did not have a legal source of income. The DHHS submitted the supplemental petition on February 14. At a February 20 pretrial hearing, respondent's attorney requested that the court appoint a guardian ad litem for her client. The court ordered that reasonable reunification efforts continue in the meantime, but the DHHS admittedly made no further service referrals to respondent.

The termination hearing began on April 5, 2018. Respondent had reenrolled at Positive Images three days earlier. The court deemed this to be too little, too late. The court noted that respondent had done little to rectify the conditions that led to adjudication—substance abuse and untreated mental illness—and had not even started many services. Based on this evidence, the court found termination supported under MCL 712A.19b(3)(c)(*i*), (g), and (j). And despite that AMG was in a relative placement, the court found termination to be in her best interests given her young age and need for permanency.

## II. REASONABLE ACCOMMODATIONS

Respondent contends that the DHHS could not support the statutory grounds for termination because it failed to provide specialized services to accommodate her cognitive impairments and mental illness. Absent certain extenuating circumstances, the DHHS "has an

affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017); *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). This includes providing services geared toward reunification through a case service plan. *Hicks/Brown*, 500 Mich at 85-86. To comply with the Americans with Disabilities Act, the DHHS must make reasonable modifications to services to accommodate a parent's special needs. The absence of accommodation precludes a finding that reasonable efforts were made. *Id*. at 86.

To reasonably accommodate services to assist a respondent, however, the DHHS must be able to assess the respondent's limitations. In *Hicks/Brown*, 500 Mich at 89-90, for example, DHHS medical professionals recommended that the respondent would "benefit from services tailored to her disability" through an outside organization. Here, a Clinic for Child Study psychiatrist conducted a preliminary assessment based on the concerns of respondent's attorney and the DHHS that respondent was mentally ill and/or cognitively impaired. That doctor did not conduct a full evaluation and deemed respondent capable of understanding the proceedings. Based on the clinician's recommendation, the DHHS referred respondent for full psychological and psychiatric evaluations, the outcomes of which would guide the provision of specialized services. Respondent did not submit to any evaluation despite three separate referrals. Respondent cannot decline to participate and then complain that her participation was not adequately guided.

## III. STATUTORY GROUNDS

Respondent also challenges the circuit court's determination that statutory grounds supported the termination decision. Pursuant to MCL 712A.19b(3), a circuit court "may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence" that at least one statutory ground has been proven by the DHHS. MCR 3.977(A)(3); *In re Trejo*, 462 Mich 341, 350; 612 NW2d 407 (2000). When termination is sought in a supplemental petition, the court's decision must be based on legally admissible evidence. *In re DMK*, 289 Mich App 246, 258; 796 NW2d 129 (2010). We review for clear error a circuit court's factual finding that a statutory termination ground has been established. *In re Rood*, 483 Mich 73, 90-91; 763 NW2d 587 (2009). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (quotation marks and citation omitted). "Clear error signifies a decision that strikes us as more than just maybe or probably wrong." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009).

The court terminated respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j), which provided at the time of termination:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

* * *

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.[1]

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Respondent contends that the DHHS could not support termination under factor (c)(*i*) because it did not make reasonable efforts at reunification. Specifically, respondent accuses the DHHS of failing to notify her when it referred her for services, thereby preventing her from rectifying the conditions that led to adjudication. Before a court may consider termination of a respondent's parental rights, petitioner must make reasonable efforts to reunite the family. MCL 712A.19a(2). "The adequacy of the petitioner's efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *Rood*, 483 Mich at 89. "While the [DHHS] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).

There was some confusion early on regarding respondent's correct mailing address; the initial petition cited an address on Bedford Street, but respondent claimed to live on Baldwin Street with her cousin. The supplemental termination petition reverted to listing the Bedford address. After some inconsistent testimony at the termination hearing, the caseworker clarified that she sent the first two referrals to the Baldwin address provided by respondent. She also tried to contact respondent by telephone and visited the Baldwin Street address to notify her of the

---

[1] Factor (g) now provides:

The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age. [2018 PA 58 (effective June 12, 2018).]

referrals, only to be met with disconnected lines and advice that respondent did not live where she claimed. Respondent did not contact the caseworker between July and October 2017. When respondent did finally check in, she requested that the caseworker send any correspondence to her sister's house as she visited there weekly. However, respondent made no attempt to begin services even after the caseworker sent referrals to her sister's house.

Respondent also challenges the DHHS's failure to make any further referrals after the February 20, 2018 hearing at which the court approved the supplemental petition seeking termination, but also ordered the DHHS to continue reasonable reunification efforts. However, the DHHS " 'is not required to provide reunification services when termination of parental rights is the agency's goal.' " *Moss*, 301 Mich App at 91, quoting *In re HRC*, 286 Mich App 444, 463; 781 NW2d 105 (2009). The supplemental petition approved at the hearing sought termination. Therefore, further reunification efforts were not required and although the DHHS ignored the court's order, it did not violate the law.

And respondent did not rectify the conditions that led to adjudication within 182 days. Respondent claimed that she started treatment for depression with Team Wellness but provided no documentation of her diagnosis, prescriptions, or attendance at therapy. Accordingly, respondent did not overcome the evidence that her mental illness remained untreated. Respondent twice enrolled in an inpatient substance abuse program. However, she early terminated during her first stay and entered only three days before the termination hearing for her second try. At the hearing, respondent admitted that if she submitted to a drug test that day, it would come back positive.

Moreover, the evidence established that respondent would not be able to rectify these conditions within a reasonable time. Respondent testified that it would take 90 days to "get [her]self together" and graduate from the Positive Images program. She believed she would be able to take custody of AMG immediately upon her release. This was not a reasonable expectation. Respondent provided no documentation (and signed no releases to allow the DHHS to request information) supporting that she participated in parenting classes or mental health treatment while at Positive Images. These services were a mandatory part of respondent's case service plan. Absent compliance with the case service plan and demonstrated benefit from services, it was unlikely that respondent could regain custody of AMG within a reasonable time.

Termination was also supportable under factor (g). Respondent had never provided proper care and custody for AMG. Respondent abused cocaine and marijuana while pregnant and did not secure prenatal treatment. AMG was immediately placed with respondent's sister after the infant's release from the hospital and therefore has never been in her mother's care. Accordingly, respondent had not provided proper care and custody in the past. "A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody" within a reasonable time in the future. *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014). Respondent's failure to participate in court-ordered services certainly had that effect in this case.

The circuit court also relied on factor (j) in terminating respondent's parental rights. Respondent's failure to address her mental illness and substance abuse issues likely would place AMG in harm if the young child were placed in her mother's care. Failure to comply with his or

her service plan is further evidence that a child may face harm if returned to the parent's home. *Id.* at 711. Ultimately, we discern no error in the circuit court's assessment that clear and convincing admissible evidence supported termination under the three factors cited.

## IV. BEST INTERESTS

Lastly, respondent challenges the circuit court's conclusion that termination of her parental rights was in AMG's best interests. She asserts that the court should have considered AMG's placement with a relative and the parent-child bond as weighing against termination. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012), citing MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence." *Moss*, 301 Mich App at 90. The court should weigh all the evidence available to it in determining the child's best interests. *Trejo*, 462 Mich at 356-357. Relevant factors include "the child's bond to the parent, the parent's parenting ability, [and] the child's need for permanency, stability, and finality. . . ." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). The advantages of the child's foster placement over placement with the parent are a relevant consideration. *In re Foster*, 285 Mich App 630, 634-635; 776 NW2d 415 (2009). However, a child's placement with relatives weighs against termination, MCL 712A.19a(6)(a), and the court must expressly consider the child's relative placement in making its best-interest determination. *Olive/Metts*, 297 Mich App at 43.

Contrary to respondent's assertion, the circuit court expressly considered that AMG was placed with her maternal aunt in making its best-interest analysis. The court noted that AMG's aunt was willing to adopt. The "bottom line," in the court's assessment, was that AMG was under two years old and a guardianship would leave the child hanging in limbo for too long. The court determined that termination of respondent's rights and adoption by the aunt was necessary to provide "stability, closure, [and] finality" for AMG. And respondent's bond with AMG was limited to that developed during weekly visits. Respondent's sister supervised these visits and reported that respondent was always appropriate and played with the baby. However, there is no record evidence that AMG would suffer any emotional harm if the visits stopped.

Further supporting the court's determination, respondent's sister had also adopted one of respondent's young sons. Respondent visited AMG at her sister's house weekly and therefore also visited with her son. Respondent would likely still be able to visit AMG (and her son) with her sister's supervision. A relationship with the child potentially could continue through these familial transactions.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Cynthia Diane Stephens
/s/ Colleen A. O'Brien